# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **SHELIA HOLMES,** | ) |
| | ) |
| Plaintiff, | ) Case No. 1:18CV00019 |
| | ) |
| v. | ) **OPINION AND ORDER** |
| | ) |
| **GENERAL DYNAMICS MISSION** | ) By: James P. Jones |
| **SYSTEMS, INC.,** | ) United States District Judge |
| | ) |
| Defendant. | ) |

*Richard F. Hawkins, III, The Hawkins Law Firm, PC, Richmond, Virginia, for Plaintiff; John B. Flood, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Washington, D.C., for Defendant.*

In this civil action, plaintiff Shelia Holmes claims that her former employer failed to reasonably accommodate her disability and terminated her because of her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112–12117. The defendant employer has moved for summary judgment, asserting that Holmes was unable to perform the essential functions of her job and that her proposed accommodation was unreasonable. For the reasons that follow, I will grant the defendant's motion.

I.

The following facts taken from the summary judgment record are either undisputed or, where disputed, are stated in the light most favorable to Holmes, the nonmoving party.

Holmes has a condition called brachymetatarsia, which means she has several abnormally short and overlapping toes. She also has diabetes. Wearing protective footwear causes friction and ulcers on her feet, which is very dangerous because of the diabetes. Wearing such shoes also causes her feet to swell and can create circulation problems, putting her at risk of requiring amputation. Holmes's brachymetatarsia and diabetes interfere with her major life activities of walking and standing.

Holmes began working for General Dynamics Ordnance and Tactical Systems, Inc., at its manufacturing plant in Marion, Virginia, in 1998 and was employed there for approximately 18 years, mostly as a Shelter Fabricator.[1] In that role, Holmes was exposed to a number of hazards. Shelter Fabricators work on the production floor around heavy objects that could fall or roll onto their feet, and there is also some risk of injury from electrical shocks or sharp objects. Although

---

[1] The parties agreed to substitute General Dynamics Mission Systems, Inc., as the defendant in this case in light of the fact that the substituted defendant now operates the business and has assumed the obligations of the plaintiff's former employer in this case. For convenience, I will refer to both the former employer and the substituted defendant as General Dynamics.

she was never injured on the job, Holmes does not dispute the presence of these hazards or the fact that they had the potential to severely injure her feet. The job description for Shelter Fabricator does not include any mention of wearing protective shoes. However, a job safety analysis dated August 15, 2013, states that wearing personal protective equipment, including protective footwear, is essential to the position of Shelter Fabricator.

As early as 2003, General Dynamics stated that employees working on the production floor were required to wear steel-toed or similar shoes. Nevertheless, Holmes was allowed to work in tennis shoes or other loose-fitting shoes for many years. She had a note from a doctor explaining that her medical conditions would not allow her to wear protective shoes, and she would show the note to her supervisor to be excused from the requirement.

Beginning in 2013, however, General Dynamics stopped exempting Holmes from the protective footwear requirement. That year, an outside auditor found a violation of the protective footwear policy by employee A.B. The audit finding was significant to the company because future violations could jeopardize the company's certifications and subject the company to other serious ramifications. As a result, the company made an effort to ensure full compliance with the requirement to wear safety shoes.

Holmes obtained another medical note explaining that her conditions prevented her from wearing safety shoes, which she showed to the company. She also told the company that she had seen other employees work in the same area of the plant without wearing protective shoes. Holmes tried to comply with the policy by wearing protective footwear, but whenever she did so, the shoes caused problems for her feet, so she removed them. When she saw a human resources representative coming her way, she would donn them again in order to appear compliant with the policy.

Human resources representative Brent Theriault spoke with several outside vendors to obtain safety shoes and shoe covers. None of the brands or varieties the company ordered for Holmes were acceptable to her. In November 2013, after reviewing a note from Holmes's doctor indicating that she could not wear protective foorwear, the company placed Holmes on an excused absence to allow her to find appropriate safety shoes, for which it would reimburse her. The company suggested that perhaps she could have safety shoes custom-made for her needs, but there is no indication that Holmes pursued that option.

Another production-area employee, G.A., was for some period of time excused from wearing steel-toed or similar shoes because he had a hammer toe. G.A. was eventually required to wear such shoes as well, but not for some time after the requirement was imposed against Holmes. When Lisa Greenway, the

plant's Environmental, Health and Safety Manager, learned that G.A. was not wearing safety shoes, she informed G.A. that he was required to wear such shoes and he assured her that he would do so going forward.

The Collective Bargaining Agreement governing workers at the Marion, Virginia, General Dynamics plant generally requires employees to wear safety equipment. Regulations promulgated by the federal Occupational Safety and Health Administration ("OSHA") typically require employees working around heavy equipment to wear protective footwear. However, OSHA has suggested that "non-metallic toes caps" may be a reasonable alternative to steel-toed shoes for diabetic employees. Pl.'s Mem. Opp'n Mot. Summ. J. Ex. N, ECF No. 49-14. General Dynamics ordered several types and sizes of protective footwear for Holmes to try, including covers that would fit over her tennis shoes. Holmes does not suggest that a particular type of safety footwear exists that would have been suitable. Rather, she contends that she cannot wear any safety shoes at all and can only wear tennis shoes or other loose-fitting shoes.

No one from General Dynamics contacted OSHA about the protective footwear requirement or alternatives that might be available. OSHA has stated in a standard interpretation letter that when safety equipment exposes an employee to greater hazards, the employee is not required to use the otherwise required safety equipment. Specifically addressing work boots and diabetics, OSHA has written

that protective footwear must not cause the employee harm, and the employer must provide properly fitting protective footwear.

Holmes was on an excused absence for two years while the company attempted to locate appropriate shoes for her. During that time, she and her attorney sometimes did not respond to their communications in a timely fashion. Holmes's primary care physician and podiatrist both opined that she could not wear protective shoes.

Eventually, on June 1, 2016, the company terminated Holmes based on these representations by her physicians and an inability to find other protective footwear that Holmes would agree to wear. Holmes was classified as administratively terminated and was invited to apply for other positions in the future. The company at the time did not have any open positions for which Holmes was qualified that did not require wearing protective shoes.

II.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its existence or non-existence could result in a different jury verdict. *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). When ruling on a summary judgment motion, the court should consider the parties' pleadings, depositions,

answers to interrogatories, admissions on file, and affidavits. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (quoting 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2728 (3d ed. 1998)). The court may not assess credibility on a motion for summary judgment. *Id.* at 569.

Summary judgment is not a disfavored procedural shortcut, but an important mechanism for weeding out claims and defenses that have no factual basis. *Celotex*, 477 U.S. at 327. It is the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

III.

The key question presented in this case is whether an employer must wholly exempt an employee from a requirement to wear safety equipment that is intended to protect her from serious injury, and to protect the company from financial harm, because she has a physical condition that prevents her from wearing the safety

equipment.  After reviewing the record evidence and considering the parties' arguments, I conclude that the ADA imposes no such requirement on an employer.

The ADA protects qualified individuals with disabilities from discrimination on the basis of their disabilities.  42 U.S.C. § 12112(a); *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 278-29 (4th Cir. 2004).  Under the statute, a qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  An employer must "make reasonable accommodations for an applicant or an employee's disability." *E.E.O.C. v. Fed. Express Corp.*, 513 F.3d 360, 371 (4th Cir. 2008).  The applicable regulations provide:

> To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(o)(3).  In determining whether a job function is essential, the Fourth Circuit has instructed that:

> First, the employer's judgment of the essential functions must be considered. *See* 42 U.S.C. § 12111(8). Second, if a written job description has been prepared ahead of advertising or interviewing candidates for a position, that description "shall be considered evidence of the essential functions of the job." *See id.*

*Stephenson v. Pfizer, Inc.*, 641 F. App'x 214, 220 (4th Cir. 2016) (unpublished).

The regulations provide a non-exhaustive list of factors to consider in determining whether a job function is essential:

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3)(i)–(vii).

Here, General Dynamics contends that Holmes is not protected under the ADA because she was not a qualified individual. It argues that wearing protective footwear was an essential function of Holmes's job as a Shelter Fabricator, and therefore allowing her to perform the job while wearing tennis shoes was not a reasonable accommodation. General Dynamics asserts that the protective footwear requirement is necessary to fulfill its legal obligations under 29 C.F.R. § 1910.136(a), which mandates that an employer "shall ensure that each affected

employee uses protective footwear when working in areas where there is a danger of foot injuries due to falling or rolling objects, or objects piercing the sole."

In opposition to the defendant's motion, Holmes argues that because the company previously allowed her and others to work without wearing safety shoes, wearing such protective footwear was not an essential function of her job. She further asserts that allowing her to wear tennis shoes would have been a reasonable accommodation. At oral argument, her counsel essentially argued that Holmes should have the right to accept the risks associated with wearing tennis shoes in a hazardous manufacturing environment if she decides that those risks are less severe than the risks posed to her by wearing protective footwear.

It is undisputed that at least as of 2013, General Dynamics viewed wearing protective footwear as an essential function of the Shelter Fabricator position. The Collective Bargaining Agreement, the outside auditor's assessment, and OSHA regulations all underscore the importance of safety shoes to protect employees' feet from falling heavy and sharp objects and other hazards. Other courts have held that when an article of clothing is an "essential safety requirement" and the plaintiff cannot wear that article of clothing because of a disability, that individual is not qualified for the position. *Mattair v. Pilgrim's Pride Corp.*, 3:17-cv-211-J-32PDB, 2019 WL 1383433, at *3 (M.D. Fla. Mar. 27, 2019); *see also Lobascio v.*

*Broward Cty.*, No. 12-60134-CIV-ZLOCH/ROSENBAUM, 2012 WL 12872587, at *8 (S.D. Fla. Sept. 28, 2012).

No reasonable accommodation existed that would have allowed Holmes to perform the Shelter Fabricator job safely, and if she could not perform the essential functions of the job safely, then she could not perform the essential functions of the job. An accommodation that alters the essential functions of the position is not reasonable. *Id.*, at *7 ("An employer . . . is not required to revoke its policies which are linked to the essential performance of the job to grant an individual with a disability an accommodation.").

The undisputed facts show that General Dynamics had legitimate business reasons for requiring Holmes to wear safety shoes. Exempting her from the requirement could have jeopardized its certification and standing with various organizations and agencies. Moreover, had she suffered a foot injury, the company may have been subjected to lost production time and increased workers' compensation costs. The fact that company supervisors had previously been lax in enforcing the protective footwear policy does not prevent the company from later deciding to tighten application of its safety rules in response to a negative audit finding and an assessment that a stricter policy is necessary to ensure worker safety.

The plaintiff does not dispute that human resources representative Theriault engaged in an interactive process with her and attempted to find protective footwear that would meet her needs. She admits that she cannot wear any kind of such footwear and would only be able to perform the Shelter Fabricator job if she were allowed to do so while wearing tennis shoes. I conclude that wearing tennis shoes in place of safety shoes is not a reasonable accommodation under the facts of this case. Because Holmes cannot establish that she is a qualified individual under the ADA, I must grant the defendant's motion.

IV.

For these reasons, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 43, is GRANTED. A separate judgment in favor of the defendant will be entered herewith.

ENTER: July 1, 2019

/s/ *James P. Jones*
United States District Judge